UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-1920(DSD/AJB)

Derrick Boone,

      Plaintiff,

v.                                        **ORDER**

City of Saint Paul, John
Harrington, Saint Paul Police
Chief, an individual,

      Defendant.

    Andrew P. Muller, Esq., Muller & Muller, 3109 West 50th Street, Suite 362, Minneapolis, MN 55410 and John A. Klassen, P.A., 10 South Fifth Street, Suite 700, Minneapolis, MN 55402, counsel for plaintiff.

    Judith A. Hanson, St. Paul City Attorney, 15 West Kellogg Boulevard, Suite 570, St. Paul, MN 55102, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants City of St. Paul and St. Paul Police Chief John Harrington. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants the motion.

**BACKGROUND**

This dispute arises out of two unrelated investigations involving the gang unit of the St. Paul Police Department (SPPD) in 2007 and 2008. Plaintiff Derrick Boone is an African-American

police officer who began work with the SPPD in 2001. Boone was a member of the gang unit in 2007 and 2008.

**I.   Investigation of the Gang Unit Commander**

The first investigation began in 2007, when a female officer complained about sexual harassment by the head of the gang unit. In response, the SPPD hired an outside investigator, who interviewed nearly all gang-unit officers, including Boone. Compl. ¶¶ 12-13; Boone Dep. 75. During his December 2007 interview, Boone complained about racially offensive screen-saver images on a gang-unit computer. Boone Dep. 46-47, 53; see Compl. ¶¶ 12, 14. The screen-saver images were removed several days later. See Boone Dep. Ex. 37; Nalezny Dep. 33.

On February 25, 2008, the SPPD gave Boone an erroneous oral reprimand[1] for failing to participate in mandatory training. Boone Dep. Ex. 17. On February 28, Boone showed documentation that he had attended the training. The SPPD rescinded the oral reprimand and removed it from his personnel file. Id. Exs. 18-19.

The outside investigator issued a final report on April 28, 2008. The report included the names of those interviewed.[2]  Le

---

[1] Oral reprimands are the lowest level of discipline and are given in writing. See Boone Dep. 116; Flynn Dep. 34.

[2] The investigator prepared three versions of the report. The first version, dated February 21, 2008, did not identify witnesses. Le Aff. ¶ 3; Nalezny Dep. 24. The second version, dated March 26, 2008, included the number of witnesses, but not their names. Le Aff. ¶ 4; Nalezny Dep. 24. Harrington received all three versions
(continued...)

Aff. ¶ 5; id. Ex. A; Nalezny Dep. 24. Boone is listed as witness number 37. See Le Aff. Ex. A. Harrington claims that he recalls the complaint regarding racist screen-saver images but did not know that the complaint came from Boone.[3] Harrington Dep. 24-27.

## II. Investigation of Boone

The second investigation arose out of Boone's off-duty work at the Dorothy Day Center, a homeless shelter. On June 18, 2008, Boone notified the SPPD that a female resident of the shelter reported to her counselor that she had exchanged text messages with Boone, that Boone had driven her in his vehicle, that she had performed oral sex on Boone and that Boone had given her a prepaid phone card. See Moore Dep. 31; DiPerna Aff. ¶ 5, Ex. A. The resident claimed that the sexual encounter occurred in an SPPD vehicle in a public parking lot while Boone was in uniform. See DiPerna Aff. Ex. A; Boone Dep. Ex. 37. Boone denied the accusations, but admitted that he exchanged text messages with the resident, gave her a phone card, and twice gave her rides in his

---

[2](...continued)
of the report. See Nalezny Dep. 17, 23-25.

[3] Boone's attempt to use Angela Nalzeny's deposition testimony to create a fact dispute about Harrington's knowledge is without merit. Nalzeny testified that attributions were "much broader" than "John said X." Nalzeny Dep. 35. Nalzeny testified that she did not know that the screen-saver report came from Boone, and there is no evidence that Harrington was aware of any information that connected Boone to the complaint.

3

vehicle without notifying dispatch.[4]  See Boone Dep. 85-91.  The SPPD began an investigation.  As a result, the SPPD assigned Boone to office duty and suspended his off-duty, overtime and vehicle privileges.  DiPerna Aff. ¶¶ 6-7.

The SPPD first conducted a criminal investigation, and sought video from the parking lot where the alleged sexual encounter occurred.  The video available did not contain "criminal elements" and the SPPD cleared the case as "unfounded" on June 25, 2008.  Klassen Aff. Ex. 13; DiPerna Aff. ¶¶ 5, 8.

On July 8, 2008, the Internal Affairs Unit (IA) began an investigation to determine whether Boone violated SPPD policies.  DiPerna Aff. ¶ 8; Wuorinen Aff. ¶ 6.  On July 16, 2008, Sergeant David Gora completed the IA report and recommended that the complaint against Boone "be classified as Not-Sustained."  Wuorinen Aff. Ex. D, at 11.  Gora sent the report to internal affairs commander Kathleen Wuorinen and Harrington for review.  On July 24, 2008, Boone wrote a two-page, single-spaced letter to Harrington.  Boone first stated that he was "saddened and embarrassed by the lack of communication within this department as it pertains to higher echelon commanders, the assistant chief, and the chief in communicating with their officers."  Boone Dep. Ex. 25.  Boone then complained that no one had explained "the reason for assigning

---

[4] One of the texts Boone received included a photo of the resident "in a bra or bikini."  Boone Dep. 89.  Boone later told the resident that she should stop sending him text messages.  Id.

[him] to a desk, not allowing [him] to work ... as a gang officer, confiscating [his] work phone, [and] taking [away] all of the overtime opportunities" and that removal of these privileges was a hardship. Id. Boone next complained that the discipline appeared "to be personal," that "someone in [his] chain of command has a personal problem with [him]" and that he was receiving harsher punishment than other officers accused of more serious conduct. Id. Boone then stated: "[t]he way I have been punished before the facts are heard is inconsistent with the way that other complaints have been handled, the only difference I see separating me from these other officers is race." Id. The letter then complains about the Assistant Chief and others involved in the investigation.

On July 30, 2008, Harrington responded by orally reprimanding Boone for insubordination because the letter violated the chain of command and contained "false statements and accusations." Id. Ex. 26. In the oral reprimand, Harrington rebutted Boone's allegations regarding the department's lack of communication. Harrington stated that Boone had "been treated fairly under the circumstances" and explained that Harrington "could have discharged [Boone] from duty pending outcome of the internal affairs investigation" but "chose not to do so." Id. Harrington noted that Boone's letter included "derogatory statements about [Harrington] and the command staff of this department." Id. Harrington further stated that he was "disappointed" that Boone "alleged that race plays a factor

5

here, as it does not." Id. The oral reprimand informed Boone of his right to appeal the reprimand.

On August 18, 2008, Wuorinen reviewed the IA report and concurred with the recommendation. Wuorinen Aff. Ex. D, at 11. Harrington did not concur with the recommendation. According to Harrington's affidavit, he believed that the complainant was credible and that some of the allegations had not been sufficiently reviewed.[5] Wuorinen Aff. ¶ 8; Harrington Dep. 41. Harrington directed IA to gather additional evidence and investigate more completely. See Wuorinen Aff. ¶ 8; Harrington Dep. 44-45.

IA continued its investigation, and in December 2008 determined that the "information was inconclusive." Harrington Dep. 45; see also Wuorinen Aff. ¶ 8. On February 26, 2009, Harrington sent the investigation to the Police Civil Internal Affairs Review Commission (Commission) for review. Boone Dep. Ex. 29; Harrington Dep. 45; Wuorinen Aff. ¶ 8. On May 6, 2009, the Commission voted 4 to 3 to recommend classifying the improper conduct complaint as "not sustained." Harrington Dep. Ex. 8. On May 13, 2009, Harrington concurred that the complaint of improper conduct was not sustained, but sustained an improper-procedure violation for transporting a civilian in a department vehicle. Id.

---

[5] Investigators inspecting Boone's vehicle found that the two front seats were damp and it had an odor of deodorizer. See Shackle Aff. ¶ 5. Evidence showed that Boone exchanged twelve text messages with the shelter resident over the course of approximately six weeks. See Harrington Dep. Ex. 8, at STP 00324.

6

Boone received an oral reprimand for the improper procedure violation. See id. Ex. 9. Harrington transferred Boone to patrol duty from the gang unit.

On July 22, 2009, Boone filed this action alleging deprivation of equal protection under 42 U.S.C. § 1983; retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a); and reprisal and aiding and abetting reprisal under the Minnesota Human Rights Act (MHRA), Minnesota Statutes §§ 363A.14 – 363A.15. Defendants moved for summary judgment.[6] The court now considers the motion.

## DISCUSSION

### I.   Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[6] Boone does not challenge summary judgment with respect to his claims under 42 U.S.C. §§ 1981 and 1983. See Pl.'s Mem. Opp'n 26 n.1. Therefore, the court grants summary judgment as to those claims.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23. "While employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases." Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010)

## II.  Retaliation

A plaintiff in an employment action may survive a motion for summary judgment through direct evidence or through an inference of unlawful retaliation under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). See Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. See id. If the

employee does so, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See id. at 692-93.  If the employer puts forth such a reason, the burden of production shifts back to the employee to show that the employer's reason is pretext for unlawful discrimination.  See id. at 693.  The employee bears the burden of proof throughout the action as to the ultimate question of whether an employer's conduct was motivated by retaliatory intent.  See Fercello, 612 F.3d at 1077.

To establish a prima facie case, Boone must show that (1) he engaged in statutorily protected conduct, (2) he suffered a materially adverse employment action, and (3) the materially adverse action was causally linked to the protected conduct.  See id. at 1077–78.[7]  Statutorily protected conduct includes opposing any employment practice that is unlawful under the MHRA or Title VII.  See 42 U.S.C. § 2000e-3(a); Minn. Stat. § 363A.15.  Boone argues that he engaged in protected conduct in December 2007 and July 2008.  The court addresses each claim in turn.

**A.   December 2007 Screen-Saver Complaint**

The parties agree that Boone's complaint about the screen-saver images was protected conduct.

---

[7] The court analyzes Title VII and MHRA retaliation claims under the same framework.  See Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002).

9

### 1. February 25 Reprimand

Boone first argues that the February 25, 2008, oral reprimand was an adverse employment action. To determine whether an action is materially adverse, the court "consider[s] whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007) (citation and internal quotation marks omitted). As a result, the court must "separate significant from trivial harms." Id. "A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1048 (8th Cir. 2007).

In this case, the SPPD rescinded the oral reprimand and removed it from Boone's file upon learning that the reprimand was erroneous. It did not alter the terms of Boone's employment. There is no evidence of any negative impact on Boone. As a result, a reasonable employee would not have been dissuaded by the rescinded reprimand, and it does not constitute an adverse employment action.

Moreover, Boone offers no evidence of a causal connection between his December 2007 complaint and reprimand. A plaintiff can show a causal connection between protected conduct and an adverse action through circumstantial evidence. See Jackson v. Flint Ink

N. Am. Corp., 370 F.3d 791, 798 (8th Cir. 2004). "On rare occasions, a close temporal connection between a protected activity and an adverse employment action may be sufficient to create an inference of retaliation." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1019-20 (8th Cir. 2005) (citation omitted). However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue." Id. at 1020 (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc)).

The erroneous reprimand occurred two months after the December 2007 complaint, thereby weakening any inference of causal connection. See Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). Boone offers no other evidence of causal connection. Therefore, Boone's claim fails as to the February 25 reprimand.

### 2. Misconduct Investigation

Boone next argues that the June 2008 sexual misconduct investigation and associated loss of privileges were retaliation for his December 2007 screen-saver report. Defendants argue that Boone fails to establish a causal connection between the two events. The court agrees. The six-month gap between the complaint and June 2008 misconduct investigation undermines an inference of causation. See Kipp, 280 F.3d at 897. Moreover, the sexual-misconduct complaint is an intervening event that "erode[s] any

11

causal connection" that could have existed. Tenkku v. Normandy Bank, 348 F.3d 737, 742 (8th Cir. 2003) (citation omitted). Therefore, Boone fails to establish a prima facie case of retaliation based on his reports about racially-charged screen-saver images, and summary judgment is warranted.

**B.   July 24 Letter**

Boone next argues that defendants unlawfully retaliated against him for sending the July 24, 2008, letter to Harrington. "[C]omplaints do not constitute protected activity for purposes of a retaliation (or reprisal) claim unless they implicate race or some other illegitimate criterion." See Colenburg v. STARCON Int'l, Inc., 656 F. Supp. 2d 947, 957 (D. Minn. 2009). Boone's letter complains about financial hardship due to loss of overtime privileges and about stress caused by the investigation. These general complaints of hardship do not implicate race and are not protected conduct. Boone does, however, mention race and allege that the "only difference" he sees between his treatment and that of other officers "is race." Viewing the letter in the light most favorable to Boone, the court assumes for purposes of the present motion that it constitutes protected conduct.

**1.   July 2008 Reprimand**

Boone first argues that the July 30 oral reprimand was an adverse employment action. An oral reprimand is the lowest form of discipline, but is "not a good thing" and "nobody wants those in

12

their files." Flynn Dep. 34. Boone offers no evidence that the oral reprimand materially altered the terms or conditions of his employment. See Elnashar, 484 F.3d at 1048. However, formal discipline, even the lowest level of discipline, might dissuade a reasonable employee from making the complaint. See Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007) (citation omitted). Oral reprimands "are more than petty slights or minor annoyances that often take place at work and that all employees experience." Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 913 (8th Cir. 2011) (citation and internal quotation marks omitted). Therefore, the court finds that the July 30 oral reprimand is a materially adverse employment action.

Defendants, however, articulated a legitimate, nondiscriminatory reason for the oral reprimand. Harrington gave Boone the oral reprimand "for insubordination," "false statements" and "derogatory statements" made about superior officers which violated department rules of conduct and civil service rules. The record shows that Boone violated these rules. See e.g., Flynn Dep. at 16. Title VII and the MHRA do not insulate Boone from rule violations. Cf. Kiel, 169 F.3d at 1136. Boone offers no evidence that defendants' proffered reason is pretext for unlawful retaliation. Therefore, Boone does not establish an inference of discrimination for the July 30 reprimand.

Boone further argues that the July 30 oral reprimand constitutes direct evidence of discrimination. "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Gallagher v. Magner, 619 F.3d 823, 831 (8th Cir. 2010) (citation and internal quotation marks omitted). Direct evidence does not include "statements by decisionmakers unrelated to the decisional process itself." Id. "Direct refers to the causal strength of the proof, not whether it is circumstantial evidence." Young-Losee, 631 F.3d at 913 (citation and internal quotation marks omitted).

Boone fails to show that the oral reprimand was motivated by race. Harrington issued the oral reprimand because Boone violated department rules of conduct and civil service rules by making false statements about supervisors and violated the chain of command. Harrington's statement that he was disappointed by the racism allegation is not sufficient to demonstrate a causal link between the oral reprimand and Boone's isolated statement that "the only difference separating [Boone] from ... other officers is race." Therefore, summary judgment is warranted.

### 2. Sexual Misconduct Investigation

Boone next argues that the sexual misconduct investigation was reprisal for the July 24 letter. The sexual misconduct

investigation materially altered the terms and conditions of Boone's employment, and therefore constitutes an adverse employment action. Boone fails, however, to show a causal connection between the letter and the sexual misconduct investigation. First, the sexual misconduct investigation began over a month before Boone sent the letter. "[A]lleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event." Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007). To the extent that Boone argues that the sexual misconduct investigation was prolonged in retaliation for the letter, he provides no grounds from which the court can draw an inference of causation. Weeks passed between Boone's letter to Harrington and Harrington's instruction to IA to investigate more fully. Therefore, Boone fails to make out a prima facie case of retaliation based on the July 24 letter, and summary judgment is warranted.

Moreover, even if Boone had met his prima facie burden, defendants articulated a legitimate non-discriminatory reason for the prolonged investigation. The allegations against Boone were serious. IA identified evidence that supported the need for further investigation, including the number of text messages exchanged, the content of those messages, the statements of social workers at the Dorothy Day Center and the fact that the interior of Boone's vehicle was damp and deodorized soon after the alleged

15

incident. The narrow margin by which the Commission voted to recommend that the complaint be classified as "not sustained" further supports defendants' legitimate, non-discriminatory reasons for continuing the investigation.

Boone argues that defendants' proffered explanations are pretext for discrimination because Harrington lied about his knowledge that Boone complained about the screen savers. The court has already determined that the record does not support Boone's bare assertion: Nalezny's testimony does not "squarely contradict" Harrington nor does it place it in doubt. Boone further argues that Harrington lied about his belief that further investigation was warranted. The record does not support this accusation.

Lastly, Boone argues that he was treated differently than others. At the pretext stage, evidence that employees who were similarly situated in every relevant way but treated differently may support an inference of retaliatory motive. See Koons v. Aventis Pharm., Inc., 367 F.3d 768, 779 (8th Cir. 2004) (citation and internal quotation marks omitted). Boone argues that "white officers, who were the subject of far more serious allegations" were treated less seriously. Pl.'s Mem. Opp'n 36. In support, he suggests that two officers were accused of sexual misconduct, one of whom was accused of sexual assault of a female whom he was transporting. These vague assertions provide no basis upon which the court could conclude that they were similarly situated in every

16

relevant way.  Therefore, Boone fails to show that defendants' proffered reasons are pretextual, and, for this additional reason, his claim fails.  Accordingly, summary judgment is warranted on the retaliation claims.[8]

### C. Aiding and Abetting Reprisal

Boone also claims that Harrington aided and abetted reprisal. The MHRA states in relevant part, "[i]t is an unfair discriminatory practice for any person: (1) [i]ntentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter."  Minn. Stat. § 363A.14.  As a result, retaliatory acts are necessary to prevail on a claim of aiding and abetting discrimination.  See Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1081 (D. Minn. 1998); Lussier v. Wal-Mart Stores, Inc., No. 06-CV-1395, 2007 WL 2461932, at *6 (D. Minn. Aug. 28, 2007). The court rejected Boone's underlying retaliation claim, and the aiding and abetting claim fails for the same reasons.

---

[8] Boone also argues that the SPPD's refusal to return him to the gang unit constitutes retaliation.  The court has already determined that removing Boone from the gang unit was not retaliatory.  Boone has similarly failed to show that preventing him from returning to the gang unit was unlawful retaliation. Although Boone may believe that this decision is unfair, the anti-discrimination statutes do "not impose a general rule of fairness on employers." Washington v. Kroger Co., 671 F.2d 1072, 1077 (8th Cir. 1982) (internal quotation marks omitted).  Moreover, "federal courts do not serve as super-personnel departments, sitting in judgment of an employer's business decisions absent evidence of discrimination." Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 522 (8th Cir. 2010) (citation and internal quotation marks omitted).

17

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [ECF No. 23] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 2, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
